```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                                                   :
DARRYL WHITLEY,                                                    :
                                                                   :
                              Petitioner,                          :
                                                                   :
        -against-                                                  :
                                                                   :
                                                                   :
ROBERT E. ERCOLE, Superintendent, Green Haven                      :
Correctional Facility,                                             :
                                                                   :
                              Respondent.                          :
                                                                   :
------------------------------------------------------------------ x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/9/13

**ORDER AND OPINION
DENYING WRIT OF HABEAS
CORPUS**

06 Civ. 10198 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

  Petitioner Darryl Whitley seeks a writ of habeas corpus on the ground that his trial counsel was constitutionally deficient in failing to request that the trial court admit into evidence the recantation of one of the prosecution's witnesses. Whitley presented the same claim to the New York courts, which held in 2007 and again in 2009 that Whitley's trial counsel had not been ineffective. Because I find that the state court's conclusion was not unreasonable, I defer to it, and I deny Whitley's petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

  The facts and procedural history of this case were discussed extensively in my previous opinion and in the Second Circuit's decision in this case. See Whitley v. Ercole, 725 F. Supp. 2d 398 (S.D.N.Y. 2010) rev'd and remanded, 642 F.3d 278 (2d Cir. 2011), cert. denied, 132 S. Ct. 791 (2011). I summarize the key facts below for the purpose of explaining my decision.

1

### a. The Murder of Dr. Wood and Subsequent Investigation

On the evening of November 2, 1981, Dr. John Chase Wood, 31, took a break from a long shift at Columbia Presbyterian Hospital in upper Manhattan to visit his pregnant wife at their apartment. Dr. Wood, wearing a white lab coat and carrying a stethoscope, soon headed back to the hospital, walking north along Riverside Drive toward 168th Street. Several blocks from the hospital, two men accosted Dr. Wood, demanding prescription drugs. Dr. Wood resisted. One of the attackers drew a .22 caliber handgun and fired at Dr. Wood, piercing his heart and lung. The assailants fled, and Dr. Wood was rushed to Columbia Presbyterian, where he died in the hospital.

New York Police Department Detective Gennaro Giorgio was assigned to investigate the murder. The assailants, however, could not be identified. The case grew cold, and, for thirteen years, no one was charged in connection with the case. Then, in July 1994, police arrested Patrick Raynard McDowell in connection with the killing, accusing him of being the shooter.[1] In March 1995, Whitley also was arrested, charged as McDowell's accomplice.

### b. Whitley's First Trial

Whitley's trial began November 19, 1997. No physical evidence tied Whitley to the crime. Instead, the evidence against Whitley consisted largely of the testimony of childhood friends who, cooperating with authorities, testified that Whitley had told them he had been involved in the shooting. One of those friends, Glenn Richardson, grew up on 158th Street, the same street where Whitley had lived at the time of the murder, and six blocks from the scene of the crime. Richardson testified that in 1981, before Wood's murder occurred, he lent McDowell a .22 caliber revolver. After the murder, Richardson ran into McDowell on the street and asked

---

[1] Richardson was acquitted of intentional murder in November 1996, but the jury did not reach a verdict on the felony murder account. Richardson was retried on that second count, and he was acquitted on that count in December 1997.

2

for his gun back. McDowell refused to return the gun, telling him it was "dirty," meaning that it had been used. Richardson did not believe McDowell, so he went to see Whitley to find out if he knew what had happened. Richardson testified that when he questioned Whitley about the gun, Whitley responded by asking Richardson if he had heard about the doctor being killed on Riverside Drive. Whitley then told Richardson, in "pig latin," that "he didn't have to do that." Whitley explained that he and McDowell had been looking for someone to rob on Riverside Drive, they ran into the doctor, and McDowell shot him.

Richardson testified that he had received a substantial benefit from helping the police with their case against Whitley. After being arrested for drug conspiracy in 1993, Richardson faced a 20-year mandatory minimum sentence. Indeed, Detective Giorgio promised Richardson that he would make sure that Richardson served the full 20-year term unless he provided assistance. However, a plea deal was made in reliance on Richardson's cooperation in Whitley's case, and Richardson was sentenced to only 75 months in jail.[2]

On December 3, 1997, the jury reported that it was deadlocked and unable to reach a verdict. Justice Ronald A. Zweibel, presiding, declared a mistrial.

### c. Richardson's Refusal to Testify

By the time the Government began to prepare for a second trial against Whitley in 2001, Richardson had been released from prison. Richardson—who was once again subject to a subpoena—told the prosecutor that he did not remember the details of his conversation with Whitley and he was concerned about testifying against Whitley again. In response, New York Supreme Court Justice Budd Goodman held a hearing with Richardson on November 26, 2001. At that hearing, Richardson testified that he did not remember making a statement to Giorgio on

---

[2] Richardson also acknowledged on cross examination that his stories to the police had not been entirely consistent. The first time he spoke to Detective Giorgio, he said that it was McDowell, not Whitley, who had told him about the doctor's shooting.

3

May 10, 1994 in which he implicated Whitley. Justice Goodman had Richardson read Giorgio's notes that transcribed Richardson's statement. When asked again if he had made a statement to Giorgio, Richardson replied: "I made it—I might have made the statement but I don't recall the whole content of the statement."

Richardson appeared at another hearing before Justice Laura E. Drager on January 7-9, 2002. There, when asked if he had any conversation with Whitley about a doctor's murder on Riverside Drive, Richardson refused to answer the question, invoking his Fifth Amendment privilege against self-incrimination. Richardson's court-appointed counsel explained to the court that Richardson was invoking his Fifth Amendment rights because Richardson "never was positive" that Whitley inculpated himself, and that Richardson had made his previous testimony against Whitley because "he felt pressure" from the district attorney's office "to say that he was sure that Darryl had said to him that he was present and participated in the robbery." Richardson turned to his Fifth Amendment rights, his attorney said, because these new statements contradicted what he had testified to in earlier proceedings, and he therefore feared a perjury prosecution if he was forced to make them.

In light of Richardson's changed stance, Whitley's trial counsel asked the court to require the prosecution to offer Richardson immunity in exchange for his testimony.[3] Justice Drager denied this request, commenting that there was no point for the defense to call Richardson as a witness because Richardson "would simply not have anything to testify about." Drager further ruled that since Richardson was an unavailable witness, the prosecution could introduce into evidence the transcript of Richardson's testimony from Whitley's first trial.

---

[3] Whitley's counsel sought immunity under N.Y. C.P.L. § 50.30, which provides: "In any criminal proceeding, other than a grand jury proceeding, the court is a competent authority to confer immunity in accordance with the provisions of section 50.20, but only when expressly requested by the district attorney to do so." Compare United States v. Turkish, 623 F.2d 769, 772-78 (2d Cir. 1980) (outlining the circumstances under which a defense witness can have immunity in federal court).

4

Whitley's attorney objected to this ruling, contending that doing so would deprive Whitley of the opportunity to cross examine Richardson about his recantation, and counsel renewed his request that Richardson be granted immunity so that he could tell the jury that he no longer remembered speaking with Whitley about the shooting. Justice Drager did not alter her ruling.

Whitley's trial counsel, after his objection to the admission of Richardson's prior testimony was denied, did not request that the court also admit into evidence Richardson's statement to Justice Goodman that he did not remember his conversation with Whitley. Whitley's counsel also failed to ask Justice Drager to instruct the jury about Richardson's refusal to testify.

### d. Whitley's Second Trial

Whitley's second trial began on January 23, 2002. Based on Justice Drager's pretrial ruling, the transcript of Richardson's testimony from Whitley's first trial was read into evidence without any further objection from Whitley's counsel. In addition, three other friends of Whitley told the jury that Whitley had admitted involvement in the crime. Bernard Barnes, who, like Richardson, grew up on the same street as Whitley, testified he visited Whitley in prison in October 1982, when Whitley was jailed in connection with a separate crime. Barnes testified, after having his recollection refreshed from a statement he made to police in 1984, that Whitley had told him he had participated in a robbery in which "the doctor put up a struggle" and afterwards, "a gun went off." Donald Caines, who had lived in the building next to Whitley's, said he was placed in the same prison as Whitley in 1983. While there, Whitley told Caines that "him and Renard [McDowell] had did the doctor." Gregory Howard, who had attended elementary school with Whitley and also lived on 158th Street, said the police took him in for questioning regarding Woods's murder. After being released without any charges, Howard

5

spoke to Whitley in the presence of two other friends, and Whitley asked Howard why the police had questioned him. Howard testified that he told Whitley that the police had asked him about the doctor's murder, and Whitley responded: "What'd they pick you up for? It was me and Toast [McDowell's nickname] down there, we did the doctor." Another witness, Ricky Darlington, who had played basketball with Whitley while they were growing up, testified that he remembered seeing Whitley talk with Howard at that time, but Darlington said he did not hear the details of the conversation.[4]

Like Richardson, Barnes, Caines and Howard testified to having criminal records and receiving a benefit from police in exchange for their assistance. Barnes said he had been charged with various drug crimes in the 1980s, and that after he gave a statement to Giorgio in 1984 that implicated Whitley, he sought help from Giorgio in getting a job and having confiscated property returned to him. Caines testified that for a period of his life, he had committed a burglary a day to support his drug habit. After Caines gave a statement to Giorgio in 1995, the Manhattan District Attorney's Office provided financial support to Caines— including paying for a month-long stay in a hotel—at Giorgio's request. Howard also had been convicted of dealing drugs. Like Caines, Howard made a statement to Giorgio in 1995 that implicated Whitley, and, following that statement, an Assistant District Attorney wrote a letter to the parole board on Howard's behalf.

The other important witness in the case was Dorothy Howze, an eyewitness to the crime. Howze testified that she had just left Columbia Presbyterian where her infant daughter had been treated for a heart condition. She was taking her daughter in a stroller to a friend's house, when she passed by the doctor and two teenagers following him. Just after they passed

---

[4] Howard and Caines had also testified at Whitley's first trial. Barnes and Darlington testified for the first time at Whitley's second trial.

6

her, Howze overheard the teenagers ask for drugs, "Beadies or Beauties," and the doctor said he did not have any. Howze said the teenagers then demanded that he fill out a prescription for them and, when he refused, started hitting him. She saw the teenagers push the doctor onto a park bench, and shortly afterwards she heard two shots. One of the teenagers then said: "Why did you do that?" and the other replied "'I didn't mean to; it was an accident,' something to that effect." The two then ran away.

Years later, when Giorgio presented Howze with a photo array of suspects in 1994, Howze identified a photo of McDowell as the shooter, but she did not pick out the photograph of Whitley. Howze also provided a description of the two suspects that was somewhat consistent with Whitley's and Richardon's appearance. Howze described the teenagers as dark skinned, thin, and about 5'10" and 5'8." Two other witnesses testified that they saw two young black men of similar heights near the time and place of the shooting, but neither of those witnesses saw the crime occur. The parties stipulated that Whitley was 5'11" and McDowell 5'7."

Two other pieces of evidence are of note. First, Giorgio took the stand and testified to interviewing Whitley on March 23, 1995. Giorgio said that Whitley told him: "You don't have no case against Renard [McDowell]. The only way you're going to get Renard is through me." The prosecution argued that this statement showed that Whitley had firsthand knowledge of the murder. Second, the parties stipulated that Whitley had pled guilty to committing a robbery with McDowell and a third person in midtown Manhattan just one month after Wood's murder. The stipulation was admitted for the limited purpose of showing Whitley's association with McDowell, and Justice Drager instructed the jury that they should not consider the robbery as demonstrating McDowell's propensity to commit crime.

7

On February 6, 2002, after two days of deliberation, the jury found Whitley guilty of murder in the second degree. On April 18, 2002, Justice Drager sentenced him to a term of 22 years to life in jail.

### c. Whitley's Appeal and Habeas Petition

Whitley appealed his conviction, arguing, among other things, that the verdict was against the weight of the evidence and that Richardson's recantation should have been admitted into evidence. The Appellate Division affirmed his conviction on January 18, 2005. The court found that that there was sufficient evidence to convict Whitley because "defendant admitted his guilt to four persons on separate occasions" and "[t]he accounts of the four men generally harmonized with each other, as well as with other evidence, and there was no evidence of collusion." People v. Whitley, 14 A.D.3d 403, 404 (N.Y. App. Div. 2005). On the recantation issue, the court found that Whitley could not argue that Richardson's statements should have been admitted into evidence, holding "that argument is unpreserved because, at trial, defendant never requested that remedy." Id. at 405. Even if Whitley's trial counsel had properly preserved the issue, the Appellate Division held that the recantation should not have been admitted into evidence. Doing so would have violated the rule of Mattox v. United States, 156 U.S. 237 (1895),[5] and, moreover, "the recantation was highly suspect, and there is no reasonable possibility that its introduction would have affected the verdict." Id. The New York Court of Appeals subsequently denied Whitley's leave to appeal on May 16, 2005. People v. Whitley, 4 N.Y.3d 892 (2005).

---

[5] The Supreme Court ruled in Mattox that "before a witness can be impeached by proof that he has made statements contradicting or differing from the testimony given by him upon the stand, a foundation must be laid by interrogating the witness himself as to whether he has ever made such statements." Mattox, 156 U.S. at 245. Federal courts no longer follow this rule. See Fed. R. Evid. 806 ("The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it.").

8

Whitley filed this petition for a writ of habeas corpus on October 23, 2006, raising multiple arguments as to why his conviction should be overturned. Among those arguments, Whitley contended that the trial court violated his constitutional rights by admitting the Richardson transcript without the accompanying evidence of Richardson's recantation, and that his trial counsel had been ineffective for failure to preserve the recantation issue for appeal. A month later, Whitley filed a N.Y. C.P.L. § 440.10 motion in New York State Supreme Court, seeking to vacate his conviction on the same grounds that he raised in his habeas petition. On September 19, 2007, I stayed consideration of Whitley's habeas petition until the New York courts decided his § 440.10 motion. In so holding, I found that there was potential merit to Whitley's ineffective assistance of counsel claim. Whitley v. Ercole, 509 F. Supp. 2d 410, 420 (S.D.N.Y. 2007).

Meanwhile, the New York Supreme Court denied Whitley's § 440.10 motion on April 16, 2007, holding that Whitley's counsel had not been constitutionally deficient. Whitley appealed that ruling to the Appellate Division, which affirmed on April 7, 2009. The Appellate Division found that under Strickland v. Washington, 466 U.S. 668 (1984), Whitley's trial counsel had not been ineffective. The court found that Whitley's trial counsel committed no error in failing to request that Richardson's recantation be admitted into evidence, since the recantation evidence was inadmissible. Even if there was an error, the Appellate Division found that the error in failing to admit the recantation evidence was not significant, as "its absence did not deprive defendant of a fair trial or cause him any prejudice." People v. Whitley, 61 A.D.3d 423, 424, (N.Y. App. Div. 2009).

With Whitley's claims exhausted in the New York State courts, I considered Whitley's arguments and, on July 22, 2010, issued an order granting the writ of habeas corpus. I

9

found that the admission of Richardson's testimony without the accompanying recantation violated Whitley's due process and Confrontation Clause rights, and that such error was not harmless. I further held that the independent-and-adequate-state-law doctrine did not bar consideration of Whitley's claim because objecting would have been pointless. I concluded that if Whitley's trial counsel had sought the admission of the recantation evidence, the trial court would have rejected that request, since the trial court had made clear that it found Richardson's recantation to be unreliable.

The Government appealed my decision, and on June 7, 2011, the Court of Appeals for the Second Circuit reversed. The Second Circuit held that the independent-and-adequate-state-law doctrine prevented me from addressing the merits of Whitley's petition. In so holding, the Second Circuit differed from my view of the evidence in the case, finding "we are simply unable to agree either that this was a 'weak' case or that the testimony at issue constituted the State's 'most important' evidence." Whitley v. Ercole, 642 F.3d 278, 293 (2d Cir. 2011), cert. denied, 132 S. Ct. 791 (2011).

On remand, the parties briefed the one remaining issue in the case: whether Whitley's trial counsel was constitutionally ineffective in failing to request that evidence of Richardson's recantation be admitted.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts should not grant a writ of habeas corpus if the petitioner's claim was "adjudicated on the merits" in state court

> unless the adjudication of the claim— (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

10

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (citations and quotation marks omitted).

Here, the Appellate Division of New York's Supreme Court decided Whitley's ineffective assistance of counsel claim on the merits, see People v. Whitley, 61 A.D.3d 423, 423-24 (N.Y. App. Div. 2009), so AEDPA's deferential standard of review applies.

## III. DISCUSSION

A criminal defendant's Sixth Amendment right to effective assistance counsel is violated if counsel's performance was deficient and such deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Attorneys need not perform perfectly; instead, attorneys are deficient only if they fall below a standard of "reasonably effective assistance." Id. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. A defendant is prejudiced, not if "the errors had some conceivable effect on the outcome of the proceeding," but only if "the defendant [can] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94. A reasonably probability "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (citing Harrington v. Richter, 131 S. Ct. 770, 791 (2011)).

Where, as here, the AEDPA standard of review applies, the review of the state court decision should be "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). "The question is not whether a federal court believes the state court's determination

11

under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Id. (citation and quotation marks omitted). In such cases, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington v. Richter, 131 S. Ct. 770, 785 (2011).

On the issue of prejudice, the question is whether the Appellate Division made an unreasonable determination in finding that there was not a "reasonable probability" that the introduction of the recantation evidence would have affected the outcome of the trial. I hold that the state court's decision was not unreasonable, and therefore Whitley is not entitled to a new trial.

The prosecution did not present an overwhelming case against Whitley. There was no physical evidence tying him to the crime. He did not confess. The sole eyewitness did not pick Whitley's photograph out of a photo array when asked to identify the assailants thirteen years after the crime. The case depended on the testimony of four individuals who had criminal records and a strong motivation to implicate their friend in order to get more lenient treatment from the government.

Nevertheless, as the Second Circuit observed, "the case against Whitley was not insubstantial." Whitley v. Ercole, 642 F.3d 278, 292 (2d Cir. 2011) cert. denied, 132 S. Ct. 791 (2011). Putting aside Richardson's testimony, three of Whitley's friends testified that he had informed them in the early 1980s that he was involved in the murder. Howard testified that, shortly after Howard was questioned about the murder, Whitley told him that "me and Toast down there, we did the doctor." Barnes said he had visited Whitley in prison in 1982, when Whitley spoke about his involvement in the killing. The following year, Caines was incarcerated

12

in the same prison as Whitley, and Caines testified that Whitley told him in prison that he and McDowell "did the doctor." Richardson's account of his discussion with Whitley was largely consistent with the stories of Whitley's other friends, so that the introduction of the recantation evidence would not have dramatically altered the case.

Contrary to Whitley's contention, I have not already decided this issue in his favor. In 2007, I agreed to stay Whitley's petition pending the New York courts' ruling on Whitley's claims, and I noted that Whitley had "shown that his unexhausted claim alleging ineffective assistance of counsel ha[d] potential merit." Whitley v. Ercole, 509 F. Supp. 2d 410, 420 (S.D.N.Y. 2007). I did not hold that Whitley had proven he was prejudiced. Similarly, when I granted Whitley's habeas petition in 2010, I held that the state court's error in admitting evidence of Richardson's testimony without also presenting evidence of his recantation was not harmless. Whitley v. Ercole, 725 F. Supp. 2d 398, 424-25 (S.D.N.Y. 2010), rev'd and remanded, 642 F.3d 278 (2d Cir. 2011). However, the standard for whether an error was harmless is much more favorable to a defendant than the "doubly deferential" standard applicable here, since in close cases, courts must presume that an error was not harmless. See O'Neal v. McAninch, 513 U.S. 432, 437 (1995). Here, there is no presumption in favor of Whitley.

I also note that in deciding Whitley's previous claim, the Second Circuit stated in dicta that "we are simply unable to agree either that this was a 'weak' case or that the testimony at issue constituted the State's 'most important' evidence." Whitley v. Ercole, 642 F.3d 278, 293 (2d Cir. 2011) cert. denied, 132 S. Ct. 791 (2011). While that court's view of the evidence differs from the opinion I expressed in my previous decision, it is the circuit court's conclusion, not my own, that is controlling.

In sum, the Appellate Division's determination that the absence of the recantation evidence did not prejudice Whitley was not an unreasonable conclusion. Because I hold that the state court did not unreasonably apply Strickland in evaluating the issue of prejudice, I need not address whether Whitley's counsel performed deficiently.

## IV. CONCLUSION

For the foregoing reasons, Whitley's petition for a writ of habeas corpus is denied. I also decline to issue a certificate of appealability. In light of the Second Circuit's view of the evidence and the deference that AEDPA demands, I cannot find that Whitley "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Clerk shall mark the motion terminated and the case closed.

SO ORDERED.

Dated: July 9, 2013
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

14